BROCK, et al., Plaintiffs-Appellants,

v.

CITY OF ST. LOUIS, a municipal corporation; Paul Berra, Comptroller; Thomas Zych, President of the Board of Aldermen; Hon. Vincent C. Schoemehl, Jr., Mayor; St. Louis Regional Health Care Inc., a corporation; National Medical Enterprises, Inc., a corporation; and Professional Care Centers Management Company, Inc., a corporation, Defendants-Respondents.

No. 51179.

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 17, 1987.

Charles R. Oldham, St. Louis, for Brock.

James J. Wilson, St. Louis, for City of St. Louis.

Charles A. Weiss, St. Louis, for Regional Health Care.

James Robert Keller, St. Louis, for Professional Care Centers.

Deborah Jean Ochs Kerns, Clayton, for Medical Enterprises.

KAROHL, Judge.

One hundred and three civil service (classified) employees of the City of St. Louis, [City] petitioned to enjoin defendant City and defendant corporations from performing under contracts to provide acute care and long term health services for residents of the city. This was the subject of Count I. Defendant St. Louis Regional Health Care Inc., is the owner of Charter Hospital. National Medical Enterprises Inc., serves as manager of Charter Hospital. The contracts were intended to replace hospital facilities owned and operated by City with health care at Charter. Professional Care Centers Management Company Inc., contracted with the City to manage Truman Restorative Center for long term medical care.

Count II of the petition requests the court to declare the rights and obligations of plaintiffs as employees and defendant City as employer under the Charter of the City of St. Louis. The request for injunction included an allegation of no available legal remedy and a prayer for attorney's fees and costs, but no request for damages to plaintiffs. The request for declaratory judgment in Count II included a prayer for a reasonable sum for damages because defendants have "threatened to deprive and will deprive plaintiffs of their property

rights in the classified positions with the City of St. Louis, and their rights as taxpayers to efficient use of their tax monies and the services of a classified system." Plaintiffs claim standing on the basis of their status as employees and as residents and taxpayers of the City of St. Louis.

The trial court made extensive findings of fact, found numerous matters of law, and entered judgment denying all requested relief.

Plaintiffs appeal claiming:

## POINTS RELIED ON

I. THE PROVISIONS OF ARTICLE XVIII OF THE CITY CHARTER PROHIBIT THE CITY FROM CONTRACTING OUT JOBS THAT HAVE TRADITIONALLY BEEN PERFORMED BY CIVIL SERVICE.

II. THE CONTRACTS BETWEEN REGIONAL AND/OR PCC INVOLVE PUBLIC WORK OR IMPROVEMENTS AND, THEREFORE, ARE REQUIRED BY ARTICLE XXII OF THE CITY CHARTER TO BE LET FOR BID.

III. THE LAYOFF OF CITY EMPLOYEES PRIOR TO THE ADOPTION OF THE 85/86 BUDGET VIOLATED THE CITY CHARTER.

IV. PAYMENTS MADE BY THE CITY PRIOR TO SEPTEMBER 30, 1985 TO REGIONAL, EITHER DIRECTLY OR THROUGH NME, WERE IN VIOLATION OF ARTICLE XXV, SECTION 9, OF THE CITY CHARTER.

V. THE EMASCULATION OF THE DEPARTMENT OF HEALTH AND HOSPITALS VIOLATED ARTICLE XXV OF THE CITY CHARTER.

It is painfully obvious that plaintiffs' brief does not comply with the requirements of Rule 84.04(d). At best, the points are restatements of what plaintiffs hoped would be the conclusions of law [I, III, IV & V] or a combination of a finding of fact and conclusion of law [II]. At trial, and on appeal, defendants have chosen not to insist the decision in this case be made on a jurisdictional claim of lack of standing. Their failure to file Motions to Dismiss the

appeal for failure to comply with Rule 84.-04(d) is consistent with this approach. Compliance with the Rule is not merely a matter of form. It frames the appellate issues in terms of the appellate function which is limited to a determination of the existence of trial court error, or lack thereof, and the prejudicial effect of error, if any. "The purpose of the Rule is to ensure that opposing counsel and the court receive notice of the issues raised. *Thummel v. King,* 570 S.W.2d 679, 690 (Mo. banc 1978)." *Zafft v. Ely Lilly & Co.,* 676 S.W.2d 241, 243 (Mo. banc 1984). Counsel for defendants in their defense of the appeal and this court in reviewing the appeal have been severely handicapped in performing their duties by the absence of a proper appellants' brief. Dismissal of the appeal is an available result which we elect not to order on the authority of Rule 84.-08(a). We note two reasons for this decision. First, no motion was filed and defendants' briefs on the issue of standing and on the merits are succinct and pertinent to the findings of fact and conclusions of law of the trial court which MAY relate to appellant's "points". Second, we find the preliminary issue of plaintiffs' lack of standing decisive.

On the matter of standing, we quote from the trial court conclusions of law:

1. The court has jurisdiction of the parties; venue is proper in the 22d Circuit. With respect to the subject matter of the plaintiffs' claims, the court lacks jurisdiction to consider matters properly subject to the jurisdiction of the Civil Service Commission of the City of St. Louis. *State ex rel. Scott v. Scearce,* 303 S.W.2d 175 (Mo.App.1957). The question of the procedural regularity of the layoffs of plaintiffs and any damages due them by reason of errors of procedure, based solely on their employment relationship with the City, cannot be considered to be properly before this court. *State ex rel. Taylor v. Nangle,* 227 S.W.2d 655, 657 (Mo. banc 1950) (discussing doctrine of primary jurisdiction).

2. Plaintiffs also seek relief as taxpayers, Petition ¶¶ 1, 23, 31. Assuming that plaintiffs have established standing as

taxpayers, the broad provisions of the Declaratory Judgment Act, §§ 527.010 et seq., R.S.Mo.1978, authorizing such actions to declare rights under ordinances and contracts (both of which are involved here) would seem to authorize this action.

3. Ordinarily, when a plaintiff seeks standing as a taxpayer, he must allege and prove special injury in the form of an increased tax burden. *Sommer v. City of St. Louis*, 631 S.W.2d 676 (Mo.App. 1982); *Collins v. Vernon*, 512 S.W.2d 470 (Mo.App.1974). Here, the evidence indicates that the contracts attacked by plaintiffs can and will result in lower expense to the City. This is particularly true with respect to the PCC [Professional Care Centers] contract, which has transformed Truman from an expense to a source of income to the City. See *J.C. Nicholls [Nichols] Co. v. City of Kansas City*, 639 S.W.2d 886 (Mo.App.1982). However, taxpayer standing also can be established when money expended on illegal contracts would constitute unlawful expenditures necessitating increased taxes to replenish the treasury. See *Russell v. Callaway County*, 575 S.W.2d 193 (Mo. banc 1978). Expenditures are being made by the City to Regional under the contract, which plaintiffs allege is illegal; the City, through its obligation to provide heat and air conditioning at Truman, is also incurring expense under its agreement with PCC. Accordingly, the court can and will decide the merits of the controversy here in the context of the claim for declaratory relief by plaintiffs as taxpayers.

Related findings of fact of the trial court, which we find supported by the evidence and which are not opposed by appellants "points" on appeal are:

1. Plaintiffs were classified employees of the City of St. Louis under the Merit System as provided in Article XVIII of the City Charter and worked under the Department of Health & Hospitals and generally were assigned to the former City Hospital at 1515 Lafayette, Truman Restorative Center on Arsenal and various Health Clinics. Plaintiffs brought this action in two counts, seeking injunctive (count I) and declaratory (count II) relief concerning certain contracts for the rendition of health care services to residents of the City.

2. Each plaintiff is a resident and taxpayer of the City of St. Louis. Plaintiffs are currently parties to appeals before the Civil Service Commission of the City of St. Louis, contesting their layoff from City employment. Subsequent to their layoffs, some of the plaintiffs were and are unemployed; others obtained employment at less salary and with less generous fringe benefits than they enjoyed while employed by the City; plaintiffs who left government service also lost such procedural protections or tenure as their public employment afforded them.

. . . . .

16. The evidence is that the contract entered into by the City with defendant Regional has resulted in improved health care for residents of the City of St. Louis, at substantially better physical facilities, without the necessity of a substantial capital investment by the City. Reasonable fiscal projections indicate that the City's revenues are not expected to increase appreciably in the foreseeable future, and that the contract between the City and Regional will save the City many millions of dollars in the foreseeable future over expected costs had the City continued to own and operate its own system. The inclusion of the City's ambulatory care clinics in the contract with Regional is consistent with developing trends nationally to consolidate or integrate all phases of health care, and is also likely to result in better service to the public at less cost.

17. The contract between the City and PCC has resulted in current savings to the City of more the 1.2 million dollars in the 1985–86 fiscal year. Since Truman came to be managed by PCC, state inspections of the facility have demonstrated marked improvement over inspections made when the City operated by facility unassisted. No credible evidence has been adduced to indicate that conditions

at Truman have deteriorated since June 17, 1985, when PCC became the lessee.

Because of the noted deficiency in appellants' brief, we were compelled to ask at oral argument which "points" were the contentions of plaintiffs as employees and which were made as taxpayers, or both. In response, appellants advised the defendants and this court that "points" I & III were employee claims and I, II, IV & V were taxpayers claims.

■ Accordingly, we find no error in the conclusion of law of the trial court that the court had no subject matter jurisdiction of points I and III as employee claims. Count I for injunctive relief appears to have been asserted by plaintiffs both as employees and as taxpayers. Count II for declaration of rights appears to claim relief only as employees. The claims, as employees, asserted in both Counts are matters appropriate to the pending proceeding before the Civil Service Commission. Finding of Fact number 2. The doctrine of exhaustion of administrative remedies applies where plaintiffs (apparently) are claiming a property interest in their employment which is a proper subject for the Civil Service Commission proceeding. *State ex rel. Scott v. Scearce*, 303 S.W.2d 175, 179 (Mo.App. 1957). Conclusion of law I.

We reach the same result on the "points" plaintiffs here argue as taxpayers. Section 525.010 RSMo.1978 and Rule 87.02(a) authorizes "any person interested" in an ordinance to have a circuit court determine and declare "rights, status or other legal relations." The trial court drew conclusions of law on the merits after *assuming* plaintiffs had standing as taxpayers who, as such, were "interested persons." We cannot make that assumption.

■ Lack of standing cannot be waived and may be considered by the court sua sponte. *Worlledge v. the City of Greenwood*, 627 S.W.2d 328, 331 (Mo.App.1982). The court in *Worlledge,* affirmed a trial court decision refusing to enjoin the City of Greenwood from discharging its police officers and contracting with the county for municipal law enforcement services. The trial court had determined the issue on the merits. The appellate court affirmed on the issue of lack of standing. Defendant Regional pled lack of standing. Other defendants did not. The jurisdictional issue of standing must be decided. *Worlledge* at 331.

■ The use of "all interested persons" in the Statute and Rule begs the question of who has standing to be an "interested" person. Plaintiffs sued individually, jointly and severally. This suit was not brought as a class action under Rule 52.08. *Worlledge,* recognized the right of a taxpayer to maintain an injunction action because it is a privilege exercisable in a public capacity. *Id.* at 331. However, there is a requisite special interest which derives from a class specially damaged by an unlawful act. *Id.* at 331. In order to assert a taxpayer claim based on illegal or improper expenditure of funds plaintiff must allege facts showing special injury in the form of an increased tax burden. *Sommer v. City of St. Louis*, 631 S.W.2d 676, 679 (Mo.App.1982). In *Sommer,* we found no taxpayer standing for failure of the plaintiff to allege a direct, pecuniary injury in the form of an increased tax burden and an increase in taxation was not a necessary conclusion from facts stated in the petition. *Id.* at 679. A taxpayer allegation or a necessary conclusion drawn from the pleadings that illegal or unconstitutional expenditure of public funds will result is required to maintain a declaratory judgment or injunction against illicit action. An allegation of illegal or unconstitutional acts supports an inference that the governmental entity will expend public funds to be supplied by taxpayers which may confer taxpayer standing. However, potential damage will not suffice. *Id.* at 680. The pleadings and evidence must show that a loss of revenue is a necessary result.

■ In the present case plaintiffs have not pled or proven at trial that the acts complained of will necessarily result in a loss of revenue to the city or an increased tax burden to the taxpayers. Finding of Fact 16 was that the City would save many

millions of dollars in the foreseeable future by contracting for health care services rather than continue to own and operate its own health care system. The record supports this finding. As employees, plaintiffs do not contest this finding. They acknowledge that labor costs will materially decrease albeit at their individual expense. Those plaintiffs who accepted employment will suffer a loss of income because the private corporations will not provide wages and benefits as great as the city had paid to civil service employees. Nor do plaintiffs contest the finding of fact. Our conclusion is supported by *Sommer:* and in *Collins v. Vernon,* 512 S.W.2d 470, 474 (Mo.App.1974): and *J.C. Nichols Company v. City of Kansas City,* 639 S.W.2d 886, 887–890 (Mo.App.1982).

Plaintiffs have not established standing to injunctive or declaratory relief as employees or as taxpayers. We remand to the trial court with instructions that the judgment be vacated and the cause dismissed.

PUDLOWSKI, P.J., and CRANDALL, J., concur.