BEAR FOOT, INC., Plaintiff/Appellant,

v.

Robert CHANDLER and Bigfoot 4X4,
Inc., Defendants/Respondents.

No. 72671.

Missouri Court of Appeals,
Eastern District,
Division One.

March 17, 1998.

The Todt Law Firm, P.C., Michael C. Todt, St. Louis, for defendants/respondents.

PUDLOWSKI, Judge.

Bear Foot, Inc. (Bear Foot) appeals the judgment of dismissal of its petition for breach of contract and invasion of the right of publicity against Robert Chandler and Bigfoot 4X4, Inc. (Bigfoot). Contrary to the holding of the trial court, Bear Foot claims it properly pleaded breach of contract because they were a third-party beneficiary of a contract between a "monster truck" show promoter and participants. Bear Foot also claims it properly pleaded invasion of right of publicity, insisting that corporations have a valid right of privacy to be protected by such an action. We affirm the holding of the trial court.

On review, we view the dismissal of Bear Foot's petition by assuming every fact pleaded in the petition to be true. *Leeser Trucking, Inc. v. Pac–A–Way, Inc.*, 914 S.W.2d 40, 42 (Mo.App. E.D.1996). A plaintiff is entitled to the benefit of every favorable inference which may reasonably be derived from the facts pleaded, *Id.*, for we must determine whether the plaintiff has invoked any substantive principle of law which would entitle it to relief. *Farmers Ins. Co., Inc. v. McCarthy*, 871 S.W.2d 82, 84 (Mo.App. E.D. 1994).

Keeping the above standard in mind, the facts as pleaded are as follows: On November 28, 1987, Bear Foot and Bigfoot both performed in a monster truck show in Houston, Texas that was presented and organized by SRO/Pace Promotions. All participants in the show signed a contract that included the following pertinent language:

4. [PARTICIPANT] HEREBY AGREES TO USE all photographs, videotape recordings or other graphic recordations which he may make of the race, any practices or qualifying activities or any other activities associated with or connected to the races which are the subject of this Agreement solely for personal nonprofit, non-commercial purposes. Each of the undersigned further agrees that the

Hoagland, Fitzgerald, Smith & Pranaitis, Robert G. Raleigh, Alton, IL, for plaintiff/appellant.

Promoter shall have the full and exclusive right to use any or all of said photographs, videotape recordings or other graphic recordations for promotional purposes or for any other commercial activity. Promoter shall determine in its sole discretion what is a commercial activity under this Agreement. All use by Promoter or its assigns or licensees shall be without charge by the undersigned.

Bear Foot claims Bigfoot included footage from the Houston show in a promotional video tape titled "Legend of Bigfoot." Some of the footage allegedly depicted Bear Foot's performance at the show.

In October 1991, Bear Foot filed the two count petition in this action. In the first count, Bear Foot claimed the production of the video tape was a breach of contract. While not claiming to be a party to the contract between SRO/Pace and Bigfoot, Bear Foot contends it was a third-party beneficiary, contemplated by the above language. Bear Foot reasons that the contract is designed to protect all competitors in the contest from unauthorized use of the performance. In Bear Foot's second count, it claims that its right to publicity was violated because its image was used without its permission.

The trial court issued summary judgment in favor of Bigfoot on the breach of contract claim and dismissed the right of publicity claim. It held that the contract did not clearly express an intent to make Bear Foot a third party beneficiary of the contract, and therefore could not be sued upon by Bear Foot. It dismissed the right of publicity claim, finding that Missouri does not support a right to privacy for a corporation. We affirm the trial court on both counts.

I.   Breach of Contract Claim

As a preliminary manner, we note that the trial court issued summary judgment in favor of Bigfoot rather than dismissal for failure to state a claim, because both sides consented to the entering of evidence beyond the pleadings. In such circumstances, the trial court is obligated to treat the matter as it would a motion for summary judgment. Rule 55.27(a).

To review a summary judgment, we view the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid-America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993); *Huber v. Magna Bank*, 959 S.W.2d 812 (Mo.App.E.D.1997). Since summary judgment is a question of law, we use the same criteria as the trial court in determining whether judgment was proper. *ITT Commercial Finance*, 854 S.W.2d at 376.

If there is no genuine issue as to any material fact at the trial court level, then summary judgment is appropriate. Rule 74.04(c)(3). The moving party bears the initial burden to show that there is no genuine issue, and any evidence presented by the opposing party that demonstrates a genuine issue will defeat the movant's prima facie showing. *Huber*. However, a genuine issue may not consist of "conjecture, theory and possibilities." *ITT Commercial Finance*, 854 S.W.2d at 378.

The contract does not show such a genuine issue of material fact because it does not specify participants are a "third party for whose primary benefit the contracting parties intended to make the contract." *Matter of Estate of Scott*, 913 S.W.2d 104, 105 (Mo. App. E.D.1995). Although the contract does not necessarily have to name the third party beneficiary, the contract must "directly and clearly express an intent to benefit an identifiable person or class." *OFW Corp. v. City of Columbia*, 893 S.W.2d 876, 879 (Mo.App. W.D.1995). We do not find that the contract provisions named any class that it specifically intended to protect. There is no clear and express indication that the parties intended to protect third parties, or contemplated suits between participants. The contract most clearly contemplates protecting the rights of the promoter, rather than third party participants, because it reserves to itself the use of all depictions of the event. The court must not speculate as to whether the contracting parties intended to benefit the third party. *Id.* Since Bear Foot does not have third-party standing to litigate on the Bigfoot–SRO/Pace contract, there is no

genuine issue of material fact, and the trial court did not err.

## II. Right of Publicity

Bear Foot claims it was improper for Bigfoot to appropriate its image for a monetary gain from selling videotapes. Since Bear Foot's pleading refers both to its right of privacy and its right of publicity, we shall address each in turn.

 Missouri courts recognize the privacy right against "appropriation of another's name or likeness." *See, Haith v. Model Cities Health Corp.*, 704 S.W.2d 684, 687 (Mo. App. W.D.1986) *quoting,* W. Prosser, Handbook of the Law of Torts, Section 117 p. 804–814 (4th Ed.1971). A person who appropriates the name or likeness of another for his benefit may be liable for invasion of the other's privacy. Restatement (Second) of Torts, Section 652C (1965). However, Bear Foot is a corporation rather than an individual. Corporations are not protected by a right of privacy. Restatement (Second) of Torts, Section 652I, cmt. c. (1965). Therefore, the trial court properly dismissed Bear Foot's right of privacy claim.

 Missouri courts have not addressed the "right of publicity" of a corporation. *Haith,* 704 S.W.2d at 688. The right of publicity is frequently recognized as a cause of action distinct from the right of privacy. *See, for example, Haelan Laboratories, Inc., v. Topps Chewing Gum, Inc.,* 202 F.2d 866 (2d Cir.1953); *State ex. rel. Elvis Presley v. Crowell,* 733 S.W.2d 89, 97 (Tenn.App.1987); *The Martin Luther King, Jr. Center for Social Change, Inc., et al. v. American Heritage Products Inc., et al.,* 250 Ga. 135, 296 S.E.2d 697, 703 (1982); *Lugosi v. Universal Pictures,* 25 Cal.3d 813, 160 Cal.Rptr. 323, 329, 603 P.2d 425, 431 (1979); Halpern, The Right of Publicity: Commercial Exploitation of the Associative Value of Personality, 39 Vand.L.Rev. 119 (1986); Kwall, Is Independence Day Dawning for the Right of Publicity?, 17 U.C.D.L.Rev. 191 (1983). The right of publicity allows a person to recover damages for pecuniary gain from misappropriation of their likeness. *Haelan,* 202 F.2d at 868. It protects a person from losing the benefit of their work in creating a publicly recognizable persona. *Id.* In contrast to the right of privacy, the right of publicity is not intended to protect the person's feelings, but provides a cause of action where a defendant has been unjustly enriched by misappropriation of the person's valuable public persona or image. *Id.;* Kwall, 17 U.C.D.L.Rev. at 202; *contrast, Munden v. Harris,* 153 Mo. App. 652, 134 S.W. 1076, 1077 (K.C.1911).

 While some states have recognized a right of publicity in individuals or the deceased, we do not believe that a corporation has such a right. The right of publicity creates a cause of action only for misappropriation of a person's likeness. *Haelan* involved a corporate plaintiff, but the court focused on protecting the publicity rights of several baseball players who had assigned the right to exploit their likeness to the plaintiff corporation. *Haelan,* 202 F.2d at 867.

Since there is no right of publicity in a corporation, Bear Foot failed to state a claim upon which relief could be granted, and dismissal was proper. We also deny Bigfoot's motion to dismiss the appellant's brief.

Affirmed.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.